# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ATTA AMPONSAH,**

    **Petitioner,**

    **v.**                                                                                     Case No. 18-CV-199

**DAVID BETH,**

    **Respondent.**

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Atta Amponsah, a citizen of Ghana subject to a final order of removal and currently detained at the Kenosha County Detention Center pending actual removal, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Amponsah alleges his continued detention beyond six months is contrary to *Zadvydas v. Davis*, 533 U.S. 678 (2001). He seeks a writ ordering his immediate release. For the reasons stated below, the petition is denied.

## BACKGROUND

The history of Amponsah's immigration proceedings is taken from documents Amponsah attached to his habeas petition and from the declaration of Edgar Del Rivero, a Deportation Officer for the Enforcement and Removal Office ("ERO"), Immigration Customs Enforcement ("ICE"), of the Department of Homeland Security. Amponsah is a citizen of Ghana who last entered the United States on or about January 19, 2017 as a non-immigrant. (Docket # 1-1 at 1.) Amponsah requested asylum and was detained at that time. (Declaration of Edgar Del Rivero ("Del Rivero Decl.") ¶ 5, Docket # 10-1.) On February 7, 2017, Amponsah was served with a Notice to Appear by U.S.

Citizenship and Immigration Services. (Docket # 1-1 at 2.) On February 15, 2017, a warrant for arrest was issued, stating that there was probable cause to believe that Amponsah was removable from the United States based on the pendency of ongoing removal proceedings against him. (*Id.* at 4.)

Several notices for a hearing before an Immigration Judge were issued in March and April 2017. (*Id.* at 7-9.) On March 22, 2017, Amponsah entered pleadings, admitting all of the allegations on the charging document. (Del Rivero Decl. ¶ 6.) An Immigration Judge sustained the charge of removability, in that Amponsah was an immigrant who at the time of application for admission was not in possession of any valid unexpired entry document. (*Id.*) Amponsah filed an application for asylum on April 12, 2017 and his case was scheduled for a final hearing to be held on June 15, 2017. (Del Rivero Decl. ¶ 7, Docket # 1-1 at 9.)

On June 15, 2017, a hearing was held on Amponsah's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge denied his applications and ordered him removed to Ghana. Amponsah waived his appeal. (Del Rivero Decl. ¶ 8, Docket # 1-1 at 5-6.) On July 6, 2017, a travel document request packet was sent to the Embassy of Ghana in Washington, D.C. (Del Rivero Decl. ¶ 11.) Amponsah filed a motion to reconsider the Immigration Judge's decision, requesting that additional documentation be considered in his case. The motion was granted on August 29, 2017. (*Id.* ¶ 9.)

In a letter dated September 7, 2017, Amponsah was informed that his custody status was reviewed and it was determined that he would not be released from ICE custody. (Docket # 1-1 at 2.) Amponsah was told that a travel document was requested from Ghana and the request was currently pending. (*Id.*) Amponsah was interviewed by the Ghanaian Consulate on September 22,

2017 and emails were subsequently sent to the Ghanaian Embassy regarding the status of a travel document. (Del Rivero Decl. ¶ 11.)

A hearing was held on November 9, 2017, where the Immigration Judge considered Amponsah's additional documentation. (*Id.* ¶ 10.) While finding that the documentation corroborated Amponsah's claim, the Immigration Judge again denied his applications because he did not demonstrate past persecution or fear of future persecution on account of a protected ground. (*Id.*) Amponsah's application for protection under the Convention Against Torture was also denied for failure to demonstrate a substantial risk that the government of Ghana would torture or acquiesce to any torture of Amponsah. (*Id.*) The Immigration Judge then ordered him removed to Ghana and Amponsah waived his right to appeal the Immigration Judge's decision, resulting in a final order of removal. (*Id.*)

In a letter dated December 22, 2017, Amponsah was again informed that ICE had reviewed his custody status and determined that he would not be released from custody at that time. (Docket # 1-1 at 1.) The letter stated that ICE was currently working with the Government of Ghana to secure a travel document for Amponsah's removal from the United States and that a travel document was expected. (*Id.*) Amponsah was accepted on a Ghana/Liberia charter flight scheduled to depart on March 12, 2018. (Del Rivero Decl. ¶ 12.) Although Amponsah departed on that flight, the Ghanaian Embassy did not issue a travel document in time and Amponsah was returned to Chicago, Illinois on March 16, 2018. (*Id.*)

Del Rivero avers that while Amponsah remains in custody, the ERO is actively in contact with the Embassy of Ghana for issuance of a travel document and has no reason to believe that Ghana will decline to issue one. (*Id.* ¶ 13.) Amponsah filed a letter on May 24, 2018 stating that he

had not yet received his travel documents and had not heard anything since March 12, 2018. (Docket # 13.)

**ANALYSIS**

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

An alien ordered removed from this country generally must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). This is called the "removal period." *Id.* During that period, the alien must be detained. *Id.* § 1231(a)(2). If not removed within the removal period, the alien is normally to be released under the government's supervision. *Id.* § 1231(a)(3). However, the Attorney General may continue to detain him beyond the removal period if the alien presents a risk to the community or is unlikely to comply with the order of removal. *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (emphasis in original), the Supreme Court addressed "whether [the] post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." The Court determined that the latter was the appropriate standard. *Id.* at 689. To find that the statute permitted indefinite detention would, in the Court's view, raise serious due process concerns. *Id.* at 690. Although the text of the statute says nothing about reasonableness, the Court read that limitation into it to avoid a collision with the Constitution. *See id.* at 690–98.

Thus, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In such a case, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Further, if removal is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

To provide clarity to later courts, the Court specified that a presumptively reasonable period of detention for purposes of removal should not exceed six months. *Id.* at 701. Once that period expires, and once the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The alien need not show "the absence of any prospect of removal—no matter how unlikely or unforeseeable," but merely that removal is not reasonably foreseeable. *Id.* at 702. Similarly, the government cannot rest solely on assertions of good-faith efforts to secure removal. *Id.* As the period of post-removal confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

The respondent argues that the Final Order of Removal is November 9, 2017—the date the Immigration Judge heard Amponsah's motion for reconsideration. (Docket # 10 at 2.) Thus, the respondent argues that Amponsah's habeas petition is premature because, at the time of filing

respondent's brief on March 26, 2018, six months had not passed from the Final Order of Removal. (*Id.* at 4-5.) Amponsah argues that his Final Order of Removal was June 15, 2017; thus, his petition is not premature. (Docket # 12.)

Whether using June 15, 2017 or November 9, 2017 as the operative date for Amponsah's Final Order of Removal, at this time, six months have passed. However, as stated above, under *Zadvydas*, even after the six month presumptively reasonable period of detention has expired, Amponsah must still provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. at 701. As the court explained in *Mancera v. Kreitzman*, No. 16-CV-89, 2016 WL 1249600, at *3 (E.D. Wis. Mar. 29, 2016):

> *Zadvydas* involved challenges to § 1231(a)(6) by aliens ordered removed but not actually removed given the lack of any country willing to accept them or the lack of an extradition treaty or repatriation agreement with the would-be receiving country. 533 U.S. at 684. The aliens argued the government would never be able to remove them and they therefore would be permanently confined in civil immigration detention, which would violate due process. *Id.* at 685–86.

While Amponsah argues that ICE has "been trying to get my travel documents since July 6, 2017 even though ICE has been in contact for over six months with Ghana there are still no travel documents," (Docket # 12), there has been no showing that Ghana refuses to accept Amponsah or United States deportees in general. On the contrary, the ERO has been in contact with the Embassy of Ghana since the initial removal order was issued, even placing Amponsah on a flight to Ghana as recently as March 2018.

Again, the *Zadvydas* Court found that an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. at 701. I cannot conclude that there is no significant likelihood of Amponsah's removal in the reasonably foreseeable future based solely on Amponsah's assertion that ICE has been trying to

secure removal documents since July 6, 2017 without success. (Docket # 12.) Unlike the detention in *Zadvydas*, Ghana has not demonstrated an unwillingness to receive Amponsah. Further, in the approximately twelve month period since the initial removal order was issued, significant progress has been made in securing Amponsah's removal, including placing him on a flight to Ghana. Therefore, Amponsah's continued detention is authorized under § 1231(a)(6) as construed by the Supreme Court in *Zadvydas*. For these reasons, Amponsah's petition for a writ of habeas corpus is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of June, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge